May it please the Court, my name is Mark Pickerel and I represent the appellants in this case. The first is whether investment advisors to mutual funds are liable under Section 36B of the Investment Company Act for overcompensation of themselves or their corporate affiliates. The second legal issue is whether investors have a private right of action against mutual fund directors for violations of Section 36A of the Investment Company Act. With the Court's permission, I will deal with each of these legal issues in order. With regard to Section 36B, the plaintiffs are investors in eight iShares mutual funds. The investment advisors for those mutual funds, as alleged in the complaint, are BlackRock Fund Advisors, Inc. and BlackRock Institutional Trust Company, N.A. Plaintiffs have alleged that BFA and BTC, as investment advisors, have grossly overcompensated themselves and their corporate affiliates. Because Congress intended that Section 36B provide a right of action for investors to contest investment advisors overcompensation of themselves or their corporate affiliates, the District Court erred in dismissing the plaintiffs' claims against BFA and BTC under Section 36B. The background for Section 36B starts with the Investment Company Act of 1940 as it was originally enacted. As described by the Supreme Court in the Daily Income Fund case and in the Jones v. Harris Associates case, Congress passed the Investment Company Act to try to address the inherent conflict of interest that exists in mutual funds. A mutual fund company will create the fund, investors will give their money over to the mutual fund for investment, but then an affiliate of the mutual fund company will operate the mutual fund, and that creates an inherent conflict of interest. In 1940, Congress attempted to address some of the conflicts of interest that lie at the heart of mutual funds by creating heightened duties for directors of mutual funds and creating procedural and substantive mechanisms for governing how investment advisors operate within mutual funds. In particular, Congress separated out in Section 15 how investment advisor contracts are to be treated and in Section 17 how affiliates of investment advisors' contracts should be treated. The SEC promulgated Rule 17d1c to make explicit that the treatment under the Act of investment advisors under Section 15 is separate from how investment advisors' affiliates are treated under Section 17 by saying that investment advisor contracts under Section 15 do not implicate Section 17. With that backdrop, for a number of years during the 50s and 60s, Congress became concerned that the Investment Company Act as originally passed was inadequate to protect investors like my clients. And so Congress passed a number of amendments to the Act in 1970 in order to bolster the protections for investors in the Act. In particular, Congress passed a new section, Section 36b, to protect investors. Plaintiffs respectfully submit that when this Court looks at the entire language of Section 36b, the structure of Section 36b, and the purpose of Section 36b, this Court will conclude that the District Court erred in dismissing plaintiffs' claims against BFA and BTC, the investment advisors. Well, your big problem, isn't it, is that the carve-out and the fact that the 2002 exemption order that was issued by the SEC, the predecessor of iShares, says that, hey, this takes the lending fee of BTC out of 36b. Your Honor, in particular, and that's why the structure and the language of 36b is so important for understanding what 36b-4 is all about, Your Honor. The reason for that is because, and I'll go through that, but if you look at 36b-3, the immediate preceding section, Congress wrote such compensation or payments six times. They used the word such, where Congress was referring to the fiduciary duty established in the main part of 36b and the action created in the main part of 36b. And in contrast, when we get to 36b-4, Your Honor, we refer to not such compensation or payments, but simply compensation or payments in connection with Section 17. Do not apply to those transactions. And what's key there, Your Honor, is what does 36b apply to? If you look at the entire language of 36b, what Congress did was two things in 36b. The first is to establish a deemed fiduciary duty on the part of investment advisors for their compensation and payments, as well as for compensation and payments to their affiliates. Counsel, let me break in because you were making a big point about this such compensation versus just compensation. And I'm not following where that gets you, that if anything, isn't the language of B-4 broader? It says it shall not apply to compensation, which would seem to be all compensation. So I don't see where the use of the word such earlier gets you anywhere because it isn't B-4. If they're not identical, it's broader because it doesn't have any qualification. The compensation paid to the investment advisor is different from the compensation paid to the affiliate of the investment advisor. And if the court will look at the structure of the statute starting with the beginning, Congress is worried about the investment advisor and its fiduciary duties with regard to its compensation as well as that of its associates. You're saying the carve-out is more limited than they say it is. I'd ask you as to what is there in the words of the carve-out that makes it more limited? Because it has to do with there is nothing in 36B-4 that addresses the compensation of investment advisors. Because investment advisor compensation under Rule 17d1c is not Section 17 compensation at all. And that's why the structure here matters, Your Honor. Instead of starting at B-4, the court should start at the beginning of the statute and read the whole thing. Because B-4 makes sense when you start at the beginning and read the whole statute. What you're fussing about really is the 35% charged by BTC as a lending fee. Yes, Your Honor. BTC is outrageously overcompensated for that service, as alleged in the complaint. The SEC hasn't found that to be outrageous, has it? I beg your pardon? The SEC and its exemption order. The SEC and its exemption order. The SEC has never reviewed the amount of compensation of BTC. There's been no aspect of any proceeding before the SEC that has even looked at the amount of compensation by BTC. Even if there's no private right of action, it's clearly that the SEC could bring such action. Actually, I believe, under the Appleese interpretation of 36B-4, the SEC couldn't even do that. Because if it's read as broadly as suggested by the Appleese, even the SEC couldn't bring an action under 36B against the affiliates, BTC in this case, could not bring an action because, based on a broad reading of 36B-4, Section 36B simply would not even apply to this transaction. And, Your Honor, it's important that the Court look at what Congress was doing in the first part of 36B in order to understand what it is not doing in 36B-4. Because what Congress did in the first sentence of 36B is establish a deemed fiduciary duty on the part of investment advisors for their compensation, and here the key language, Your Honors, is, or that of their affiliates. It didn't just say for investment advisors' compensation. The deemed fiduciary duty is for their compensation or that of their corporate affiliates. With respect to your argument, then, that it doesn't involve investment advisors, investment advisors are not under Section 17, is there any question that the SEC order is a rule regulation or order under Section 17? The SEC order permitting affiliates to engage in short sale lending within the iShares umbrella is certainly an order permitting those affiliate transactions without reviewing the compensation. I have only two and a half minutes here, Your Honor. The structure of the statute matters. The first sentence provides a deemed fiduciary duty for investment advisors for their compensation or that of their affiliates. What's your best case supporting your position? This is a novel case, Your Honor. This is the first court to look at and interpret this provision, particularly Section 36B-4. Is there any indication from any source that the 35% here is an extreme outlier in the industry, that everybody else charges 5%? Yes, Your Honor. As we alleged in the complaint, BlackRock's, BTC's compensation for their services is at least four times the norm, probably higher. The 40% is at 10% would be at most the norm within the industry. Vanguard charges 0% for this, for comparable service. And so as alleged in the complaint, BTC's compensation is far beyond anything that the rest of the industry has negotiated. It's surprising that anybody who wants to have their securities lent participates with them then? Your Honor, as difficult as these cases are the amount of resources it took for us to even get this case to the complaint stage and then have it dismissed immediately? No, I didn't mean that why don't people bring suits. It's why does any investor invest with them in this particular type of investment? Because the amount that they steal is a small percentage of a very large number, which ends up being a very large number. But because you're dealing with a small percentage of theft, it's not something that investors look to in making an investment decision. But importantly, that's not what Congress was worried about in 36B. They were worried about overcompensation of investment advisors or their affiliates for payments that are far beyond anything that would take place at arm's length. And that is what the plaintiffs alleged here. Has your client ever complained directly to the SEC and said, hey, you take action, this is outrageous? No, because Congress in Section 36B wanted investors and a key part of the statutory scheme was to permit investors to sue to vindicate their rights. And that's the second part of 36B. Congress specifically provided an action for investors to sue investment advisors when they overcompensate themselves. An action may be brought under this subsection by the commission or by a security holder. Yeah, and that's the or part is key there because the SEC has done nothing to stop this egregious overpayment and my clients would like to. Thank you. I have three minutes for rebuttal. You have three minutes for rebuttal. Good morning, Your Honors. I'm Seth Schwartz. I'm here today for the appellees. The core issue presented by this appeal is one of statutory construction. And as Judge Clay wrote in the Providence Hospital's case, when you're dealing with statutory construction, the starting point is the language of the statute. And if the language of the statute is plain and clear on its face, that should be the ending point, too. And with that guidance, it behooves me to start with the language of the statutory provision that's at issue in this case, which is Section 36B.4, which says that Section 36B, quote, shall not apply to compensation or payments made in connection with transactions subject to Section 17 of this title or to rules, regulations, or orders thereunder. There is no ambiguity in that language. And plaintiffs have identified them. They've struggled mightily to, but there just isn't any. Rather, they focus on a different provision of Section 36B, which is the very first sentence of that statute, which provides that investment advisors have a fiduciary duty with respect to compensation that they or their affiliates receive from the mutual funds they serve. The plaintiffs in their brief anyway, their claim of ambiguity, rests in part on the observation of the Supreme Court in the Jones case that the meaning of Section 36B's reference to the term fiduciary duty is less than pellucid. But that's not the issue in this case. It's not what the meaning of fiduciary duty is under Section 36B. The question is whether there's a fiduciary duty, whatever that term happens to mean, does that apply to Section 17 compensation, which what we're talking about indisputably is. The first sentence of Section 36B states the general rule. Advisors owe a fiduciary duty with respect to the compensation that they or their affiliates receive from a mutual fund. Section 36B-4 is an express exception and provides that there is no fiduciary duty with respect to Section 17 compensation. So even if the meaning of the term fiduciary duty is not pellucid, that doesn't mean that there's any ambiguity in Section 36B-4. It states in no uncertain terms that there's no fiduciary duty, however defined, with respect to Section 17 compensation. So as we've heard in the opening part of this argument, the appellants are asking this court to essentially ignore the clear language of Section 36B-4, and they want the court to decide that what 36B-4 really says is that it does apply to Section 17 compensation, but only as against investment advisors, not affiliates. The fatal problem with that is it just has zero support in the language of Section 36B-4. On the face of Section 36B-4, there's no exception for investment advisors. It doesn't even mention investment advisors. It flatly exempts all Section 17 compensation, regardless of the recipient, regardless of whether it's an investment advisor, regardless of whether it's an affiliate. So... for purposes of where we are procedurally, we're stuck with that allegation. And your opposing counsel says the SEC may not, under your interpretation, even be able to take action against it. Well, that's just flat wrong. The SEC has ample authority to enforce its order and to bring any claim it wishes under Section 17. If the order is violated, that automatically means that BlackRock... When you say the order, is that the 2002 exemption order you're talking about? Yes, the exempt order. And how would you violate that order if it is an exemption? Does it say you're exempted if... Yes, there are conditions to the ability to be exempt from Section 17, which would prevent BlackRock from receiving this compensation at all. And so what the SEC did in granting the exemptive order is say, well, we'll let you do it, subject to certain conditions. And if BlackRock were charging a grossly excessive fee, I dare say that's in violation of the conditions of the order, and the SEC would have the authority to enforce that order and obtain appropriate relief. So Section 36B.3, which is another provision that appellants have pointed to, doesn't help appellants at all. The only thing Section 36B.3 says is that if you have a claim for excessive compensation under Section 36B, you can only bring that claim against the recipient of the compensation. It doesn't say that you can bring a claim against anyone for a violation of Section 17, or for Section 17 compensation that you say is excessive. It just says that if you otherwise have a claim to challenge compensation under Section 36B, you can only proceed against the recipient. What appellants are saying, in effect, in trying to latch on to Section 36B.3, is even if the recipient here is BTC, which is not an investment advisor, I know they just said it is, and I'll come back to that in a second. If BTC is the sole recipient of the Section 17 compensation, you can nevertheless go after BFA, because it's the investment advisor that owes the fiduciary duty. While Section 36B.3 says you couldn't do that under any circumstances. You can only go after the recipient. In the complaint, what plaintiffs alleged was that BTC is just the securities lending agent. That's paragraph 14 of the complaint. And that BFA is the investment advisor, that's paragraph 15. During the course of the briefing, they've shifted position on that, but it doesn't really make a difference to the outcome here, because as we said at the outset, 36B.4 exempts any claim for violation of 36B. based on Section 17 compensation. There was some argument that's been made in the papers, that if you go with the interpretation that we're advocating and the district court found, you're going to wipe out all claims pertaining to affiliate compensation. And that's just not true. And one need look no further than the Norwest No Action Letter that appellants have so heavily relied on to see that what the SDC staff has said in that No Action Letter and in other No Action Letters, is that Section 17 does not apply at all to any affiliate compensation that's not based on a share of profits or revenue generated on behalf of the fund. So if you have a simple service arrangement for a set fee, for example, for transfer agency services, custodial services, accounting services, all of those things are not subject to Section 17, and they're all subject to Section 36B. So there is no doomsday scenario where affiliates walk free, regardless of the type of compensation that they receive. The other issue that's on the appeal is Section 36A. The question is whether there's a private right of action. Every court to consider the issue has said no. I note that in the briefing, appellants did not, as far as I can tell, didn't even attempt to explain why under Sandoval there would be a private right of action under Section 36A. Instead, their argument is that under the Supreme Court's case in Transamerica, which involves the Investment Advisors Act, not the Investment Company Act, this court should find a private right of action under Section 36A. The problem with Transamerica is that it didn't involve a statute like the Investment Company Act, which has an express private right of action, and as these cases hold, when Congress does that, the fair implication, in fact the only implication, absent other evidence, is that it did not We say there's absolutely no basis in light of Sandoval to find that there's a private right of action under Section 36A, and the District Court correctly dismissed that claim, too. Counsel, I tried to do a little research into what might be excessive fees if we got to that, and I found this Gartenberg case and some other cases where actions were brought. Were they brought because they were in places where there was not an exemption letter, or how did those cases come about? Gartenberg, in fact, most of the 36B cases that are reported involve challenges to advisory fees, which is the fee that an investment advisor, in this case BFA, gets for providing investment advice to the funded advisors. Completely different service than a securities lending fee, and I think this may be the first securities lending fee case, but Gartenberg, in terms of trying to decide what's excessive and what's not, Gartenberg, beyond the general principle it discusses for assessing the excessiveness of the fee, which has been adopted by because there was no such exemption letter. That's a Section 15 kind of case, which governs advisory fees. It's a different service. Okay, so they exist because they're clearly under 15. I take it your adversary is trying to say that this really ought to be under 15 as well, so the 17 exemption wouldn't apply? I don't know how you get there, because this is a securities lending thing. I guess I heard him say a couple of times that they aren't really under Section 17. I mean, that is their argument, isn't it? You can say it, but for the life of me... I'm just trying to understand the different arguments. Okay, go ahead. I really don't have anything more unless the Court has further questions. Okay, thank you, Counsel. Mr. Pickrell, you have three minutes for rebuttal. Thank you, Your Honor. In paragraph 64 and paragraphs 112 and 113, the plaintiffs have alleged that BFA and BTC are investment advisors under the Act, and so their compensation is the compensation that is the cap for what they can lose for their breach of their fiduciary duties. And so, to be very clear, we allege that both BFA, and there's no doubt that BFA is an investment advisor, we have also alleged that BTC is an investment advisor because... You have to back that up. I beg your pardon? What do you back that up with, that BTC is an investment advisor? Under the Act, an investment advisor, and it's Section 36C of the Act, says that a corporation is an investment advisor for purposes of the Act when the corporation acts as an investment advisor. And when you look at how an investment advisor has been defined both under the Investment Advisor Act, which was the Act in Transamerica, as well as under this Act, it is a corporation that selects investments. And the allegations that we have in the complaint, Your Honor, regarding the operation of the short-stock, short-sale lending operation, means that BTC is involved in investment advisor activity. And when we go to trial, if we're able to as a matter of law, we will show that BTC acts as an investment advisor for purposes of the Act. That's extremely important here, Your Honor. Extremely important. Because Congress separated out in Section 36B how it treated investment advisors. It has nothing to do with what shares, what companies' iShares mutual fund invest in. This is money where people are borrowing the stock on a short-term basis and putting up cash collateral. And what happens, Your Honor, is that BTC chooses whether that collateral, which does become the protection for the investors, what that collateral is, how much they will pay for it, what the prices will be. Those are all issues that BTC does as an investment advisor for these funds. I mean, if I go to the butcher and ask him, how good is the meat, that's advice. If he tells me it's $20 a pound, that's not advice, that's a charge. That's correct. But when he's choosing what the charge should be, on behalf of somebody else, he's advising that other person. And here, BTC advises my clients. Hamer Budge's testimony and the Norwest letters regarding the operation of 36B. BTC advises your clients by telling them how much it's going to charge? Is that what you just said? That's correct. That's the operation that BTC is involved in. But most importantly, the assessment of what collateral to take, whether that collateral is sufficient or not, Your Honor, is exactly the action of an investment advisor. And those issues are not related to the district court's dismissal of this case at all. Okay, thank you, counsel. Any further? Okay, thank you. Thank you, Your Honor.